We are privileged to have sitting with us this morning, Chief Judge Renee Baum of the District of New Jersey. Welcome, Judge. Thank you, Judge. We have five cases on the calendar this morning. We had six. One was withdrawn and settled yesterday. Today we have two from the Court of Veterans' Appeals, one from the District Court, one from the PTAB, and one from the MSPB. That case and one of the veterans' cases are submitted on the briefs and will not be argued. Our first case is Joshua Evans v. Secretary of Veterans Affairs, 2023-2356. Mr. Dillekers. Good morning, Your Honor. Thank you, and may it please the Court, on behalf of Mr. Evans, I do want to thank this Court for this opportunity to present his appeal. I'd like to summarize four points at the outset that I think will help the Court understand these issues. Three deal with the resolution of the TDIU matter. Number one, the Board denied the claim under the mistaken belief that there was no increased rating claim pending and TDIU can only be within the scope of an increased rating claim. The Veterans Court, number two, denied the appeal because Mr. Evans only asked for TDIU as part of his PTSD claim. A fact finding that was never made by the Board, and as we argued, violates Chenery and 7261C. Number three, TDIU is within the scope of any claim so long as it is explicitly or reasonably raised before a final decision on a claim or an appeal. The fourth point concerns the scope of the 2010 claim. I don't want to focus on that today unless the Court wants to, but I would like to stay focused on the TDIU, but to that point, because 4.71A directs the VA to separately rate neurological abnormalities resulting from a spine injury, when these are present, the nerve impairments are always within the scope of a spine claim as a matter of law. Okay, can I just, I was a little confused by the briefing, so can I just say what I think this case is about in English and then you can tell me if I'm right or not. You're trying to get fact date the 2017 date for TDIU. Prior to that, yes, Your Honor. And your argument is that it shouldn't be limited to the PTSD claim in which it was asserted, but it should claw back to the other disability claims you had for other stuff before that time? Correct, Your Honor. Primarily the left leg nerve impairment, which the VA determined was, well, we know it was in 2012. That's acknowledged. That's undisputed. But what was the status of that claim in 2017 when you filed the TDIU claim? It was under appeal before the board, Your Honor. I believe the final, I'm sorry, I believe the substantive appeal was filed, but it all happened right around that same time. Regardless, a notice of disagreement had been filed. It was in appellate status waiting for a decision from the board when the TDIU claim was initially submitted. And what happened here is that when I became involved, I looked at the record. I noticed that he had this pending claim, and we had talked, and he had indicated that the nerve issue had contributed to it. So we wrote the board immediately and told them that the pending claim before the board should address a TDIU rating. And the secretary, by the way, acknowledges that. On page eight of his brief, he doesn't point to that point in time, but after the court remanded the first decision because the board ignored that argument, the secretary says at this point, he argued a combination of orthopedic and PTSD causes unemployability, cited in appendix 53, and then argued that the appeal should include three issues, higher rating for lumbar, that's not before the court, radiculopathy, and TDIU. He asserted that it's TDIU. Is there a jurisdictional issue here, application of law to fact? No, Your Honor. What we're asking this court to do is look at, number one, the Veterans Court violated Chinnery first when it changed the basis of the, it affirmed on a different basis than the board. The board said that you cannot, there was no increased rating claim pending, therefore, Rice does not apply. The Veterans Court, on the other hand, held that his request for TDIU only was based on his PTSD. That fact was never adjudicated by the board, and it certainly was not relied upon when it denied the appeal in 2021. So, number one, we want this court to acknowledge that they violated Chinnery, but two, that they also violated their statutory jurisdiction when they made that finding a fact, and they also made the finding a fact that when they addressed some evidence, there was an expert evidence that we had submitted to the VA, and they went into detail about what that evidence did or did not say. That is a clear, factual determination that the board never touched, never even really addressed when it was discussing the TDIU matter. The board essentially said, as a matter of law, you cannot be earlier than 2017, which is wrong. And that's the other part of this appeal, is that the law says Roberson, Comer, Murphy to slightly different issue, but Roberson and Comer are on point in that when TDIU is either explicitly, as we did here, or implicitly raised, as in those cases, it's within the scope of that claim. How is it that it was explicitly raised here? What is your position? So, page 89 of the appendix, Your Honor, and again, these are things that the board didn't address and the Veterans Court did. So, I understand that this court cannot review facts to law, but page 89 of the appendix, we very clearly wrote, the appeal before you is for the left leg. We want you to also consider TDIU rating in conjunction with that appeal. That was the first time. The board ignored it. We got a remand to address it, or they got a remand from the Veterans Court. There was some other procedural events that happened, but then when it came back up, again, page 8 of the secretary's brief, page 53, 51 to 54, they acknowledge that we raised it to the board, that we wanted them to consider TDIU with the left leg nerve claim. And so, it was, so long as it's raised with that claim before a final decision is made, either on a claim as in Roberson or on appeal here, it's within the scope of that claim. Okay, we seem to be jumping back and forth, and I'm getting a little confused between your Chenery argument and then your other argument. Let's go back to the Chenery argument.  The board, February 2021, held that, one, there was no claim for an increased rating pending on appeal when the TDIU claim was filed. Two, the TDIU was a separate claim of entitlement and not a claim based on an increase in severity for the existing service-connected disability. And three, even if the board were to assume entitlement should have arose earlier, a grant of benefits cannot occur before the claim was made. What did the board, what did the Court of Veterans Claims, what is their fact-finding that you say was beyond what the board, or something different and new beyond what the board? So, page 12 of the appendix, Your Honor, that, the full paragraph, the evidence points to, Mr. Evans points to, regarding his unemployability, links it not to the left-leg radiculopathy, but to PTSD. And then at the end of it, or I'm sorry, then it goes into, that's the primary issue, page at the, I'm sorry, page 11. Well, how is that different than what the board said in terms of the consequence, where they said it wasn't about, it wasn't tied to any of these other things? So, it's a matter of record it was tied to the PTSD. Nobody was disputing it. Correct, Your Honor. Right. So, I don't quite understand the difference. So, the initial filing, he said, as a pro se, unrepresented veteran, I have PTSD, which was service-connected, and I want, I can't work. And so, he asked for it, for the condition that was service-connected. When he hired me, I looked at it, I talked to him, and he realized, oh, I can claim it before the nerve is service-connected, and that's what we did. The service-connection issue was before the board, and we asked them to consider it. When did you ask that? The first time, before, it was around 2017. I'm not sure of the exact date, Your Honor. I think it was 2018. Or maybe 18, but it was before the very first board decision that was later vacated, and before the board's remand, which predated the final decision that's now before this court. So, it was raised at least three different times to the board that he was asking for this rating as part of the neurological abnormality. And what the veterans, I'm sorry, what the board did, to your point, Judge Pearls, what the board did was said, as a matter of law, we cannot go earlier than 2017 because there was no increased rating claim pending to attach it to. And what the veterans court said is, well, that's not entirely correct. You can because Rice kind of does that, but in this case, you didn't raise it as part of the NERV claim. And those are two very different rulings. One is a legal determination that there cannot ever be a claim, and two is that under these facts, you did not do this. And so, by changing the basis of the determination, the veterans court first violated Chenery, and then also, while doing that, determined facts in the first instance, which the board never did. And the secretary points to some fact-finding by the agency below the board. The board is the one who makes final decisions, but even so, those determinations were based on an entirely different fact set where he had sought, what they were looking at. Can we go back to Judge Lurie's first question, which is the law of facts? Rice is the centerpiece of this case. Yes, Your Honor. You're not contending that Rice was wrongly decided. You're contending that the CAVC improperly applied the principles articulated in Rice. Correct, Your Honor. Okay. Why is that a law of facts? Well, let me back up. Let me back off of that just a bit, Your Honor. Our contention is that when the scope of the claim was looked at, that the Veterans Court misapplied Murphy from this court, Rice from its own court, Comer, and Roberson in saying essentially that in affirming the board's determination, and again, we have to look at what the board did here. Yes, the Veterans Court did a lot of things in violation of Chenery and its jurisdictional statute, but the determination of the board was that he cannot file a claim. There was no claim pending to attach TDIU to because it was not an increased rating claim, and that's wrong. That's not Rice. That's not Murphy. That's not Roberson. That's not Comer. All of those stand for the proposition that the evidence developed during the entire life of the claim informs us what the scope of that claim is. So that's the Rice legal error that the board made. The Veterans Court compounded that by affirming that, but then also affirming the ultimate decision, but doing it in a way that violates Chenery and its jurisdiction. But the question whether Evans implicitly raised the TDIU claim prior to February 2017 is lawful fact, is fact. Prior to 2017, Your Honor, or 2021? 17. It is not, Your Honor. I think that, again, this is Roberson. This is just an application of Roberson and Comer, and the secretary, well, first, that question needs to go back to the board. That's what we asked for in our brief. We're not asking this court to solve that question because it is fact-finding. It is what is the scope of the claim that was pending before the board when it made the 2021 decision. The board never got to that question. It said we can't go earlier than 2017 because there was no increased rating claim. And then the Veterans Court stepped in and did the job of the board. Wrongly, again, this court's not going to look at what their fact-finding was, but just based on page 8 of the secretary's brief, there's some doubt as to what the court's fact-finding was. So we want this to go back to the board for, one, to correctly apply Rice, Roberson, Comer, Murphy, and, two, to tell us what the scope of that claim was. You are into your rebuttal time? Yes, Your Honor. I will reserve the rest unless there are any other questions. We will give you your full three minutes. Thank you, Your Honor. Mr. Hawking. May it please the Court. There's no tenery issue in this case. There is a Rice issue. This case is all about what does Rice mean. Argued before the board and the Veterans Court and before this Court, Mr. Evans suggests that Rice means something that Rice doesn't hold, which is, and let me just tell you what Rice holds. Rice holds that if someone is pursuing a new claim or a claim for increase, and during the course of the development of that claim, evidence comes to the fore that the individual is unemployable under the TDIU unemployability regulation, the effective date for a subsequent award for the TDIU would be the same as the date that started that particular claim, whether it be a new claim or a claim for increase, and Rice goes into some explanation about why that is. What this case is about is an attempt, and before I say what this case is about, Rice is a situation in which the basis of the TDIU is the same as the basis of either the new claim or, in that case, the claim for increase, right? So what we have in this case is lots of different claims are being pursued at different times. Some are physical, involving the legs and the lumbar spine, and one is mental, involving post-traumatic stress disorder. And it is the post-traumatic stress disorder disability that forms the basis for the award by VA in this case of TDIU, and that's at Appendix 99. And it's clear that that RO says, and RO, I will just say as an aside, is a very significant entity within the VA claim process. It is below the board, but if there's no appeal, it is the final agency action. So it's like a district court judge's pronouncement that doesn't get appealed. It's not worth less simply because it doesn't get appealed. So that's what Rice says. And what Mr. Evans is arguing here is, well, the board and the Veterans Court misapplied Rice because I have this pending leg nerve claim out there, and it was live at the time the PTSD award came. So I should be able to look to that claim and then follow it back in time to when it originated for purposes of the effective date of my TDIU, notwithstanding that there's no evidence of record suggesting that that leg injury had anything to do with the TDIU award. In fact, at the reply at 7, Mr. Evans concedes that he's never challenged the idea, to your point, Your Honor, of whether the evidence suggested prior to 2017 TDIU. It's only at the submission of the claim in 2017 when Mr. Evans, unfortunately, was hospitalized at the end of 2016 for a PTSD episode. And then when he was released, submitted a claim, and in that claim for increase, because he had at that point been already awarded a couple years earlier a 50% claim. It had been, he had asked for a decision review officer review, which is a higher level review in that initial office. He had asked for one of those in 2012, and it was denied. Are we talking about PTSD? Yes, we're talking about the history of the PTSD. And so that was, so at that point in 2012-2014, the lumbar spine claim, that had been denied, and it wasn't being pursued. It was over. The PTSD claim had been denied, wasn't being pursued. It was over. The right leg nerve claim, same thing. The only thing alive was this left leg claim, and it had been denied because he had failed to identify that he actually had it. There had been no evidence in the record, according to the VA, that he was actually suffering from it, so no present disability. He had challenged that and was continuing to challenge that and didn't until about 2020 when the board finally granted that benefit. So when the PTSD incident arises, causing Mr. Evans to be hospitalized in 2016, he submits a new claim in the beginning of 2017. And I'm going to, in that claim he actually asked for both an increase and TDIU, which is granted. I'm going to change that fact for a second to demonstrate how Rice would operate. Let's say he comes in and just asked for the increase. And in the course of developing that increase claim, the VA determines that he's actually unemployable. Maybe it happens a year later, two years later. When they go ahead to award the damages under Rice, notwithstanding the fact that he didn't actually identify TDIU in that 2017 claim, he gets the benefit under Rice of the 2017 date for the TDIU award. That's how Rice works. And that's what happened here, isn't it? Well, it didn't have to happen here because he actually asked for both. So Rice doesn't even get implicated, but the hypothetical I just explained would be how Rice would work. And that's how it would work. And your position is that Evans is trying to make this a legal issue, when in fact it isn't. I would actually say he's trying to suggest that Rice means something it doesn't. So to the extent he's making an argument that Rice stands for a proposition that it doesn't stand for, that could be considered a legal question. And this court could say, we don't read Rice that way, as the Veterans Court didn't read it in this case. And as we suggest in our briefs, it's not the proper way to read Rice, simply because someone, and it's very common in the VA, that people have various claims and various levels or stages of development. I could have a pinky thing, and I could have a mental thing, and I could have a toe thing, all going separately through the system. And he didn't ask for TDIU in connection with any of the other claims? He did not ask for TDIU with connection to any of the other claims prior to when he asked for it with respect to PTSD. Then, as counsel mentioned and referenced in the book, in the appendix, the year after, while he was pursuing his lay claim, he said, hey, by the way, I think that you should consider TDIU because I think my lay claim contributed to it. And that's in Appendix 89. Yeah, that's the one that comes after in 2018. So by then, he'd already been in receipt of TDIU based entirely on the PTSD. So the point of him doing that is to try to get an earlier effective date, to try to tie it back to one of these other things. Rice is not available, as we explain in our briefs, to allow that to happen. So this court would have to change Rice and say, it doesn't matter. It doesn't have to be a relationship between the basis of the claim for increase, like what's the case in Rice, and the basis for the TDIU award. That's why I noticed the question earlier, which is it seems to me that the appellant is trying to make it a legal issue, i.e. a Rice issue, when in fact your position is it is not. Well, it's, I mean, yeah, our position is Rice was properly applied to this case or rather not applied to this case because the argument was Rice requires you to give me this back date in this situation. And that's why we don't have a Chenery problem here because that's the argument he put forth at the Veterans Court and at the Board. And at both levels, and I do believe the Board does respond to this on 22, I think it's 22, and it says there was no increased rating claim on appeal. The TDIU was a separate claim of entitlement in itself. That's not, it may not be using the words that Mr. Evans would prefer, but that's what he's saying. The Board is saying you don't, and it says on the page before too, appendix 21, you don't meet the Rice requirement, which is an exception to 5110. Maybe we should just talk about that for a second. 5110 is the statute that applies for effective dates. 38 U.S.C. 5110A is, subsection A is the one that's generally applicable here. And the two sort of prongs for that type of analysis are the effective date for an award is based on the date of the claim or facts found, whichever is later. Now generally, that's the date of the claim because you go and submit a claim because you've gone to a doctor and been told you have a condition that could be related to your service. You file a claim, and so that's how it works. Sometimes it can be the opposite, and that's where Rice kind of steps in, where the facts found for the unemployability part come after the date of the claim just because that's how it was developed. And Rice then creates this exception to the normal statutory rule by allowing you to use the same date of the original claim as long as it's the same claim that forms the basis for the TDIU award. So that makes sense. And that's why here you can't stretch Rice in the way that Mr. Evans would like because he's saying it doesn't matter if the basis of the PTSD was different than this other claim I've got out here. I just happen to have this other claim out here, so I should be able to benefit from an earlier effective date. And our position is no. It has to be kind of one of the fundamental principles of veterans' law is this concept of nexus. It comes up with the how do you get service connection. You have a present disability, you have an event in service, and you have the nexus. And this is kind of another way of a nexus example here within how the VA process works. There has to be a nexus in order for you to benefit from this exception to 5110, which normally says it's the latter of facts found or claim. And like I said, here that would have been the claim. But he gets the benefit of Rice. But Rice, that's all he gets. Or he doesn't actually get the benefit of Rice here. But veterans generally would get that kind of benefit if they met the criteria of Rice. And I think that, frankly, sums up our view is this is a TDIU. Mr. Evans was very good in immediately asking not only for an increase in 2017, but also asking for TDIU. He got it immediately. And the leg issue that's been going on is not a basis to disturb that finding. The Veterans Court's reference to that finding, which Mr. Evans now claims is a Chenery violation, is a classic example of a court responding to a legal argument by pointing out that the facts don't support it. So the way that works is he comes in and says, Rice requires my claim to be granted. And the Veterans Court comes back and says, no, PTSD was the basis for the TDIU award, not your leg. That's not a Chenery thing. That's just recognizing what the RO did back in 2017 in Appendix 99 and what the board said again in rejecting his Rice theory in Appendix 22. It's what every court would say when you're confronted with, oh, this is how this works. No, as a matter of fact, that law does not apply in the way you think it does. So you think we have jurisdiction because this is a question of interpreting Rice, or is it a question of applying Rice to facts? So the answer to that question, Judge Lurie, is it depends on how you interpret the blue brief. You could find that this is just challenging the Veterans Court's application of Rice to the facts of the case. You could also say that he's arguing that Rice was, but he doesn't clearly say this, but implied in his argument is that Rice means more than it does. So the result could be either a dismissal or an affirmance, depending on how the court reads the blue brief. Can I ask this question? Is there any evidence in the record prior to 2017 of unemployability? The record, nothing that would, I think, meet what typically is unemployability. I would respond in this way, though, that there is evidence of what I would call employability. First of all, you have he leaves the service in 2010, and then for the next three years, as I understand it, and this is, you can look at Appendix 105 and then Appendix 69, which is a 5 September 2013 exam, he indicates he's actually attending college. And when you read the exam, or all the appendix together, it looks like he attended college for three years, presumably between 2010 and 2013. That's not evidence of unemployability. And then in 21 October 2014, which is the date that the decision review officer denied claims for increase for both the lumbar spine and the PTSD before the 0.17 incident, it's indicated that he's working as a sales associate. Also not evidence of unemployability. Even when the claim is later pursued before the agency and a vocational expert is retained by Mr. Evans, that vocational expert says that the leg injuries would probably support sedentary employment, which isn't enough, but it's the PTSD that would support unemployability, but he's already in receipt of that. Yeah, that would be the short answer. Thank you.  Mr. Deliques has three minutes if he needs it. Your Honor, to your point, whatever the record showed prior to 2017 is not before this court. It's a factual matter, which is our primary issue, that the board never did that. The court did. The board did not. The secretary is actually correct in their explanation of Rice, but he runs astray where he says that once you've requested TDIU for one or more disability, you can never change your basis for seeking an unemployability rating. When the TDIU was granted, Mr. Evans was not yet being compensated for the left leg nerve impairment. That's the basis. That's the crux of this entire argument is veterans should be allowed to change the nature of their rating when new disabilities are added because it adds additional impairment. As we know, Saunders interpreted disability to be functional impairment, and so once the disability picture changes, the VA has to go back to the date of that claim, 2012 or 2010, whatever it ends up being, and reassess his entire rating. TDIU is not a claim. All the case law from the Veterans Court, from this court, has been over and over again affirmed that TDIU is not a claim. It is a rating, and just as if they were to assign a 10 percent, a 40 percent, a 70 percent to any disability, and it combines to their combined rating, they have to consider a TDIU rating if it's raised by the veteran. When he told the VA, I can't work in part because of my now or soon-to-be service-connected nerve disability, that's what triggers the VA's obligation under Roberson, under Comer, under Rice, to consider the TDIU rating when it assessed the rating of his nerve. Now, the board could have remanded it and said, we haven't gotten a decision from the RO, let's wait to see what they say, because there is quite a bit of unknowns in there in just how severe the nerve disability is, but none of that analysis was done. The board simply said, this is not an increased rating, therefore we can't attach a TDIU rating to it. That's wrong. The secretary just confirmed that when they explained how Rice works. Rice is when any claim is pending, and the veteran either explicitly asks in this case, or the record reasonably raises it, at any point in time. There's no case law, and the law really doesn't support a notion that you can't go back further than when the evidence or the veteran requested that specific rating. The evidence tells us what the severity of the conditions are in combination, and when new additional disabilities are added to the picture, it requires the VA to go back, reassess everything, and determine whether an unemployability rating is appropriate. So, I'm out of time, and I appreciate, unless there are any questions, we just ask to vacate the decision and send it back to the board for initial fact-finding. Thank you, counsel. We appreciate both arguments, and the case is submitted.